IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| FAY SERVICING, LLC & WILMINGTON SAVINGS FUND SOCIETY, FSB D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR HILLDALE TRUST,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>TURTLEBACK PROPERTIES, LLC,<br><br>　　　　Defendant. | Civil Action No.: _____ |

# COMPLAINT

Plaintiffs, Fay Servicing, LLC ("Fay") and Wilmington Savings Fund Society, FSB D/B/A Christiana Trust, not Individually but as Trustee for Hilldale Trust ("Hilldale Trust") (Fay and Hilldale Trust, collectively, "Plaintiffs"), by and though its undersigned counsel, as its complaint against Turtleback Properties, LLC a/k/a Turtleback Restorations, LLC ("Turtleback"), alleges as follows:

## INTRODUCTION

1.　　This is an action for damages suffered by Plaintiffs as a direct and proximate result of Turtleback's negligent and wrongful conduct in connection with the repair and restoration of the property located at 15 Carriage Road, Greenwich, CT 06807 (the "Property"). Turtleback entered into a contract with Fay in March 2019 to perform certain repairs and improvements to the Property. Pursuant to the contract, Plaintiffs paid $236,880.00 to Turtleback to finance the repairs and improvements. Turtleback failed to perform the majority of the repairs required by the contract, for which Plaintiffs paid, and which Turtleback represented to Fay had been completed.

1

Of the repairs that Turtleback did complete, the majority were negligently performed, which required Fay to engage a new contractor to fix Turtleback's unacceptable and insufficient work. Plaintiffs seek damages in this action for Turtleback's breach of the repair contract, negligence, breach of implied warranty, and conversion.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Fay Servicing, LLC is a Delaware limited liability company with its principal place of business in Illinois.

3. Plaintiff Wilmington Savings Fund Society, FSB D/B/A Christiana Trust, not Individually but as Trustee for Hilldale Trust is a federal savings bank with its home office located in Delaware.

4. Defendant Turtleback Properties, LLC a/k/a Turtleback Restorations, LLC is a Connecticut corporation with its principal place of business at 105 Tuckahoe Lane, Fairfield, CT 06824.

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity exists between the parties and Plaintiffs seek more damages than the jurisdictional threshold amount of $75,000. Fay is a citizen of Illinois, Hilldale Trust is a citizen of Delaware, and Turtleback is a citizen of Connecticut, establishing complete diversity. Plaintiffs seek more than $75,000 in damages against Turtleback in this action.

6. This Court has personal jurisdiction over Turtleback because Turtleback is a citizen of Connecticut and the events that are the basis for this lawsuit occurred in Connecticut.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District and the Property that is the subject of this action is situated in this District.

**FACTUAL ALLEGATIONS**

8. Fay is the servicer and asset manager for the Property, on behalf of Hilldale Trust, the owner of the Property.

9. On or about March 19, 2019, Plaintiffs and Turtleback entered into a contract for the repair and restoration of the property located at 15 Carriage Road, Greenwich, Connecticut 06807.

10. Turtleback submitted a bid totaling $236,880.00 to complete the repairs required by the contract. A true and correct copy of the repair bid is attached hereto as **Exhibit A**. The repair bid was signed by Steven M. Lenz, Turtleback's owner and principle. *Id.* The repair bid specified the work that was to be done by Turtleback. *Id.*

11. Plaintiffs and Turtleback agreed to a draw schedule for the repair bid. Pursuant to that agreement, Plaintiffs extended a first draw of $52,640.00 on March 22, 2019; a second draw of $52,640.00 on May 17, 2019; a third draw of $52,640.00 on May 28, 2019; a fourth draw of $52,640.00 on June 27, 2019; and a fifth draw of $26,320.00 on October 1, 2019. In all, Plaintiffs paid and Turtleback drew a total amount of $236,880.00.

12. Turtleback never completed all of the repairs identified in the repair bid, and many of the repairs that Turtleback did perform were substandard and unacceptable.

13. In October and November of 2019, Fay began requesting updates from Turtleback on the status of the repairs to the Property, as inspections of the Property revealed that much of the work to be done by Turtleback had not been completed or started.

14. Turtleback could never provide a satisfactory answer on why the agreed-to repairs had not been completed pursuant to the terms of the contract.

15. Turtleback and its workers and contractors failed to complete many repairs to the Property, and Turtleback's workers and contractors failed to even be present at the Property for months at a time.

16. Because Turtleback was not present at the Property and was not completing the agreed upon repairs, Fay engaged a new contractor in February 2020 to complete and fix the work that Turtleback failed to complete or negligently completed.

17. After engaging the new contractor, Fay discovered that Turtleback failed to obtain the proper permits to complete the requested work on the Property and negligently completed much of the work it was paid to complete. Plaintiffs accordingly were required to pay the new contractor to fix the work that Turtleback failed to complete and negligently completed.

18. For example, Turtleback negligently installed the HVAC and septic systems leading to damage and additional costs to repair those systems.

19. To fix the damage caused by Turtleback's negligent repairs and to complete the work that Turtleback failed to perform, Plaintiffs will have to pay at least $140,000 to new contractors.

20. Plaintiffs, through counsel, requested that Turtleback provide an accounting and documentation to show how it expended the $236,880.00 paid to it for the repairs and improvements to the Property.

21. Turtleback represented to Plaintiffs that it spent $45,000.00 for supplies needed for the repairs and $185,596.00 to pay contractors and workers to perform the repairs, totaling $230,596.00. Turtleback did not account for $6,284.00 of the funds it was paid for the repairs.

22. To substantiate these payments, Plaintiffs requested that Turtleback provide receipts, invoices, and other documentation showing the expenditures. Despite numerous requests to provide the requested information, Turtleback never provided the documentation.

## CAUSES OF ACTION

## COUNT I – BREACH OF CONTRACT

23. Plaintiffs allege and incorporate by reference, as though fully set forth herein, all of the preceding paragraphs.

24. On March 19, 2019, Plaintiffs and Turtleback entered into a contract for the repair and restoration of the Property.

25. Turtleback breached the contract by failing to perform the repairs required under the contract; performing certain repairs required by a contract in a substandard and unacceptable manner; failing to perform the repairs in compliance with the repair bid, the applicable architectural plans/drawings or prints, industry standards, and/or applicable building codes; and by failing to timely complete the repairs.

26. Plaintiffs had to hire and pay an independent contractor to review and assess the substandard and unacceptable repairs.

27. Turtleback never completed the repairs required by the contract.

28. If Turtleback had complied with the contract and completed the work in a timely fashion, Plaintiffs would have been able to sell the Property for substantially more than it will be able to sell the Property for once the repairs have been completed.

29. Much of the work done by Turtleback will have to be reperformed, repaired, or corrected by a new contractor at Plaintiffs' expense. Plaintiffs will also have to engage a new contractor to finish the repairs that Turtleback never completed.

30. Due to Turtleback's failure to complete the repairs, Plaintiffs have been unable to market and sell the Property. Plaintiffs' inability to market and sell the property has caused carrying costs and expenses related to the continued preservation and ownership of the Property.

31. Turtleback knew that its delays in performing work and failure to complete the work would cause Plaintiffs to incur additional carrying costs related to the Property and would prevent Plaintiffs from selling the Property.

32. Accordingly, Plaintiffs have been damaged by Turtleback's breach of the contract.

**WHEREFORE**, Plaintiffs demand judgment against Turtleback for compensatory damages, consequential damages, reasonable attorney's fees, costs, interest, and such additional relief as the Court deems just and equitable.

## COUNT II - NEGLIGENCE

33. Plaintiffs allege and incorporate by reference, as though fully set forth herein, all of the preceding paragraphs.

34. On March 19, 2019, Plaintiffs and Turtleback entered into a contract for the repair and restoration of the Property.

35. Turtleback negligently completed many of the repairs required under the contract.

36. Turtleback failed to complete many of the repairs required under the contract.

37. An independent contractor reviewed and assessed the work performed by Turtleback and found that many of the repairs were performed by Turtleback in a substandard and unacceptable manner.

38. Turtleback also failed to obtain the necessary permits to complete the work and failed to comply with industry standards and applicable building codes.

39. Plaintiffs had to hire and pay an independent contractor to review and assess the substandard and unacceptable repairs.

40. Turtleback owed a duty of care to Plaintiffs in performing and completing the repairs consistent with the contract, the bid, the applicable architectural plans/drawings or prints, industry standards, and applicable building codes.

41. Turtleback breached the duty of care, as set forth above.

42. To fix the damage caused by Turtleback's negligent repairs and to complete the work that Turtleback failed to perform, Plaintiffs will have to pay at least $140,000 to new contractors.

43. Plaintiffs also suffered damages as a result of Turtleback's negligence, including, but not limited to, expenses for the independent contractor's review and assessment of the negligent repairs; expenses to repair, replace, and correct the negligent work performed by Turtleback; depreciation in the value of the Property due to Turtleback's failure to timely and properly complete the repairs; and carrying costs incurred due to Plaintiffs' inability to market and sell the Property.

44. Turtleback's failure to complete the repairs in a proper and timely manner proximately caused Plaintiffs' damages.

**WHEREFORE**, Plaintiffs demand judgment against Turtleback for compensatory damages, consequential damages, reasonable attorney's fees, costs, interest, and such additional relief as the Court deems just and equitable.

**COUNT III – BREACH OF IMPLIED WARRANTY & COVENANT OF GOOD FAITH**

45. Plaintiffs allege and incorporate by reference, as though fully set forth herein, all of the preceding paragraphs.

46. Connecticut law implies a covenant that contracts will be performed in a reasonably in a good workmanlike manner, suitable for the purpose for which they are intended.

47. As set forth above, Turtleback failed to complete the repairs in a reasonably good and workmanlike manner. An independent contractor reviewed and assessed the work performed by Turtleback and found that many of the repairs were performed by Turtleback in a substandard and unacceptable manner.

48. Turtleback accordingly breached its implied warranty for the repairs to the Property.

49. Turtleback breached the implied covenant of good faith in the contract by failing to complete the repairs in a workmanlike manner and filing to timely complete the repairs.

50. Plaintiffs suffered damages as a result of Turtleback's breach of implied warranty, including, but not limited to, expenses for the independent contractor's review and assessment of the negligent repairs; expenses to repair, replace, and correct the negligent work performed by Turtleback; depreciation in the value of the Property due to Turtleback's failure to timely and properly complete the repairs; and carrying costs incurred due to Turtleback's inability to market and sell the Property.

**WHEREFORE**, Plaintiffs demand judgment against Turtleback for compensatory damages, consequential damages, reasonable attorney's fees, costs, interest, and such additional relief as the Court deems just and equitable.

## **COUNT IV - CONVERSION**

51. Plaintiffs allege and incorporate by reference, as though fully set forth, all of the preceding paragraphs.

52. Pursuant to the contract for repairs to the Property, Turtleback requested and Plaintiffs paid a total amount of $236,880.00 for Turtleback to complete the repairs to the Property.

53. Plaintiffs, through counsel, requested that Turtleback provide an accounting and documentation to show how it expended the $236,880.00 paid to it for the repairs and improvements to the Property.

54. Turtleback represented to Plaintiffs that it spent $45,000.00 for supplies needed for the repairs and $185,596.00 to pay contractors and workers to perform the repairs, totaling $230,596.00. Turtleback did not account for $6,284.00 of the funds it was paid for the repairs.

55. Turtleback was unable or unwilling to provide documentation for the use of the $230,596.00.

56. An independent contractor's review of the Property indicated that much of the work in the repair bid had not actually been completed by Turtleback.

57. Upon information and belief, Turtleback misappropriated for its own use some of funds Plaintiffs paid to Turtleback.

58. Upon information and belief, Turtleback exercised unauthorized control over some of the funds paid to it by using the funds for its own use rather than for repairs to the Property, as required by the contract.

59. Turtleback accordingly converted specific, identifiable money from Plaintiffs, and Plaintiffs have suffered damages as a result of Turtleback's conversion by the loss of those funds.

**WHEREFORE**, Plaintiffs demand judgment against Turtleback for compensatory damages, consequential damages, reasonable attorney's fees, costs, interest, and such additional relief as the Court deems just and equitable.

Dated: October 15, 2020                    Respectfully submitted,

*/s/ Gregory G. Marshall*
Gregory G. Marshall (Federal Bar No. ct30667)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street NW, Suite 1350
Washington, DC 20036
(202) 719-8207
gmarshall@bradley.com

*Attorney for Fay Servicing, LLC and Wilmington Savings Fund Society, FSB D/B/A Christiana Trust, not Individually but as Trustee for Hilldale Trust*

**DEFENDANT IS TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

**TURTLEBACK PROPERTIES, LLC A/K/A TURTLEBACK RESTORATIONS, LLC**
**127 SENTRY HILL RD**
**MONROE, CT 06468-3224**