UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, *Not Individually But as Trustee for Hilldale Trust doing business as* Christiana Trust,<br>    *Plaintiff*,<br><br>v.<br><br>TURTLEBACK PROPERTIES, LLC,<br>    *Defendant*. | No. 3:20-cv-01565 (KAD)<br><br><br><br><br><br><br>June 21, 2021 |

**MEMORANDUM OF DECISION RE: PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT (ECF NO. 14)**

Kari A. Dooley, United States District Judge:

This action for damages arises out of a contract between Fay Servicing, LLC ("Fay Servicing") and Turtleback Properties, LLC a/k/a Turtleback Restorations, LLC (the "Defendant" or "Turtleback") pursuant to which Turtleback agreed to perform certain repairs and improvements to a property located at 15 Carriage Road in Greenwich, CT (the "Property") owned by Hilldale Trust. Plaintiff Wilmington Savings Fund Society, FSB d/b/a Christiana Trust as Trustee for Hilldale Trust ("WSFS" or the "Plaintiff") alleges that Turtleback failed to perform the majority of the work required by the contract and completed the majority of the repairs that it did undertake negligently.[1] Although properly served on November 25, 2020, Turtleback failed to appear, answer, or otherwise defend this action. (*See* ECF No. 9.) Accordingly, on January 14, 2021,

---

[1] While originally named as a co-Plaintiff in this action, counsel was unable to verify the citizenship of each of the members of Fay Servicing's ultimate parent LLC for purposes of establishing diversity jurisdiction and thus filed a notice of voluntary dismissal as to the claims brought in the name of Fay Servicing. (ECF No. 24.) Absent Fay Servicing, diversity jurisdiction is met by virtue of the fact that WSFS is a federal savings bank with its home office in Delaware and that the sole member of Turtleback is an individual domiciled in Connecticut. (Compl. ¶ 3; Pl.'s Notice re: Citizenship of the Parties, ECF No. 16.)

1

Plaintiff moved for default entry against the Defendant pursuant to Fed. R. Civ. P. 55(a), which the Clerk of Court granted on January 22, 2021. (ECF No. 11.) On March 8, 2021, Plaintiff moved for default judgment against the Defendant pursuant to Fed. R. Civ. P. 55(b) (ECF No. 14) and on May 19, 2021, the Court held an evidentiary hearing on the motion. Upon review of the record, the Court GRANTS the Plaintiff's motion and directs that Judgment enter in favor of the Plaintiff on its breach of contract claim in accordance with the following.

**Standard of Review**

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment[:] Plaintiff[] must first obtain an entry of default under Rule 55(a), by showing that the defaulting party 'has failed to plead or otherwise defend.' The second step is to seek a default judgment under Rule 55(b)." *Hernandez v. Apple Auto Wholesalers of Waterbury LLC*, 460 F. Supp. 3d 164, 176 (D. Conn. 2020) (quoting *Priestley v. Headminder Inc.*, 647 F.3d 497, 504 (2d Cir. 2011) (*per curiam*)) (quotation marks and internal citations omitted). Upon entry of a default, the allegations of the complaint are deemed proven for purposes of establishing the Defendant's liability. *Id.* The question of damages however must yet be established by the Plaintiff. *Id.*

"It is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of S. Conn. Ltd. Partnership v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (citing *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). "In general, when evaluating whether to enter default judgment, a court should consider factors, such as the following:

> '(1) the amount of money involved; (2) whether issues of fact or of substantial public importance are at stake; (3) whether the default is largely technical; (4) whether the plaintiff has been substantially prejudiced by the delay involved; (5) whether the grounds for default are clearly established or are in doubt; (6) whether the default was caused by a good-faith

mistake or excusable neglect; (7) how harsh an effect a default judgment might have; and (8) whether the court thinks it later would be obligated to set aside the default on defendant's motion.'"

*Matter of Cangiano*, 411 F. Supp. 3d 234, 239–40 (D. Conn. 2019) (quoting *Cablevision*, 141 F. Supp. 2d at 281–82). "[I]n civil cases, where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party." *Cablevision*, 141 F. Supp. 2d at 282 (quoting *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984)).

"In considering whether or not to grant a motion for default judgment, [the Court] may take into account whether the complaint states a valid cause of action." *ALV Events Int'l v. Johnson*, 821 F. Supp. 2d 489, 493 (D. Conn. 2010). In determining damages, "[t]he outer bounds of recovery allowable are of course measured by the principle of proximate cause. The default judgment d[oes] not give plaintiff a blank check to recover from defendant any losses it had ever suffered from whatever source. It could only recover those damages arising from the acts and injuries pleaded and in this sense it [is] plaintiff's burden to show 'proximate cause.'" *Cablevision*, 141 F. Supp. 2d at 282 (quoting *Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158–59 (2d Cir. 1992)).

**Discussion**

The following allegations are drawn from the Plaintiff's complaint (ECF No. 1) and are deemed proven for purposes of the instant motion.

On March 19, 2019, Fay Servicing entered into a contract with Turtleback for the repair and restoration of the Property. (Compl. ¶¶ 1, 9.) Turtleback submitted a repair bid signed by its owner and principal, Steven M. Lenz, in which it estimated that it would cost a total of $263,200 for it to complete the repairs set forth in the contract. (*Id*. Ex. A.) The parties agreed to a draw schedule, pursuant to which Plaintiff extended four draws of $52,640 each on March 22, May 17,

May 28, and June 27, 2019, and a fifth draw of $26,320 on October 1, 2019.  (*Id*. ¶ 11.) Plaintiff accordingly paid Turtleback a total of $236,880. (*Id*.)  However Turtleback never completed all of the repairs identified in its bid and neglected to be present at the Property for months at a time; of those repairs that it did complete, many were not completed to Plaintiff's satisfaction.  (*Id*. ¶¶ 12–15.)  When Plaintiff requested an accounting from Turtleback to demonstrate how it expended the $236,880 it had remitted, Turtleback responded that it spent $45,000 on supplies, and $185,596 to pay its contractors and workers, totaling $230,596. (*Id*. ¶¶ 20–21.)  Turtleback did not account for $6,284 of the funds it received from the Plaintiff and has not otherwise substantiated its expenditures with receipts, invoices, or other documentation requested.  (*Id*. ¶¶ 21–22.)

In February 2020 Fay Servicing engaged a new contractor "to complete and fix the work that Turtleback failed to complete or negligently completed." (*Id*. ¶ 16.)  In doing so Fay Servicing discovered that Turtleback had not obtained proper permits to complete the work it had contracted to perform and that certain work was negligently performed, such as the installation of HVAC and septic systems, leading to damages and additional costs incurred in repairing those systems.  (*Id*. ¶¶ 17–18.)  Plaintiff represents that Fay Servicing expended, on WSFS's behalf, an additional $146,744.50 to pay another contractor to complete and repair the work on the Property due to Turtleback's failure to satisfy its obligations.

Based on the foregoing, Plaintiff brought claims against Turtleback for breach of contract (Count One), negligence (Count Two), breach of implied warranty and the covenant of good faith (Count Three), and conversion (Count Four).  However during the hearing Plaintiff's counsel clarified that the Plaintiff seeks default judgment and an award of damages on the breach of contract claim only.  Counsel also confirmed that as a federal court sitting in diversity jurisdiction, this Court should apply Connecticut law to the Plaintiff's contract claim.

In Connecticut "[t]he elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291, 87 A.3d 534 (2014). Taking all of the well-pled allegations in the complaint as true, the Plaintiff has sufficiently alleged facts to support the first three elements of its breach of contract claim against Turtleback. Specifically, Plaintiff has alleged that the parties entered into an agreement—with Fay Servicing acting on the Plaintiff's behalf, that Plaintiff performed under the agreement by extending payment to Turtleback in the amount of $236,880, and that Turtleback breached its agreement by failing to complete the necessary repairs and by performing certain repairs in a substandard manner. These allegations were also corroborated at the evidentiary hearing by the testimony of Melissa Sequete, the Assistant Vice President of Trials and Mediations for Fay Servicing.

As for the amount of damages, Ms. Sequete testified that due to Turtleback's failure to perform the contract as required under the contract, Fay Servicing ultimately engaged another contractor, Pro Fox Contractors ("Pro Fox"). According to Ms. Sequete, Fay Servicing remitted, on the Plaintiff's behalf, $146,744.50 to Pro Fox to remedy the work that Turtleback had performed inadequately and to complete the outstanding work that Turtleback failed to perform at all. Plaintiff also offered into evidence the itemized invoices received from Pro Fox. (Pl.'s Exs. 9–18.) In addition, Ms. Sequete testified that the Plaintiff incurred $24,137.50 in costs for dumpsters placed on the Property during the renovation, an expense which Turtleback was required, though failed to pay. Plaintiff offered into evidence the invoices from DJ Petrucci, LLC for the dumpster expenditures. (Pl.'s Exs. 3–7.) In total, the Plaintiff seeks judgment in the amount of $170,822.00 against Turtleback as compensation for the payments remitted to DJ Petrucci and to Pro Fox by

Fay Servicing, which were ultimately incurred by WSFS.[2]  The Plaintiff also seeks pre and post-judgment interest.

The Court is satisfied that the testimonial and documentary evidence submitted establishes the Plaintiff's entitlement to the damages sought.  The Court has also considered the relevant factors concerning, *inter alia*, the prejudice to the Plaintiff as a result of the Defendant's non-appearance, the lack of doubt regarding the grounds for default, and the likelihood that the Court may need to later set aside the default, and concludes that these factors also support entry of a default judgment in light of the Defendant's failure to appear, respond, or otherwise defend against this action in any manner.

**Conclusion**

Judgment shall enter against the Defendant and in favor of the Plaintiff on the breach of contract claim in the amount of $170,822.00, plus pre-judgment interest at the rate of six percent per annum pursuant to Conn. Gen. Stat. § 37-3a, and post-judgment interest on the amount awarded herein as provided by law.  The Clerk of Court is directed to enter the Judgment and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of June 2021.

                                                  */s/Kari A. Dooley*
                                                  KARI A. DOOLEY
                                                  UNITED STATES DISTRICT JUDGE

---

[2] Although the Plaintiff's motion seeks a default judgment against Turtleback in the amount of $140,000, at the hearing the Plaintiff presented evidence of greater damages and clarified that it is seeking a total judgment in the amount of $170,822.